# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LADONNA HUNTER-DELAHO,

    Plaintiff,

v.                                                                                               Civ. No. 20-77 WJ/GBW

TRIPLE S. TOWER, INC., and
MICRWAVE TRANSMISSION SYSTEMS, INC.,

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed March 29, 2021 **(Doc. 41).** Having reviewed the parties' briefing and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted.

## BACKGROUND

This is a *de novo* appeal of the decision issued by the Human Rights Bureau on the Plaintiff's Complaint of Violation of the New Mexico Human Rights Act based on her allegation of a termination of employment after reporting a serious medical condition, pursuant to N.M.S.A. 1978 § 28-1-13 ("NMHRA"). Plaintiff was hired in February of 2013 by Triple S. Tower ("Triple S"), Inc. a local operating company or subsidiary of Microwave Transmission Systems, Inc. ("MTSI") as on office manager on or about February 15, 2013.[1]

Plaintiff alleges that she was terminated in mid-April 2017 on the basis of her medical condition—a kidney cyst—on the pretext that the company was downsizing and laying off

---

[1] Plaintiff raises an issue regarding whether Triple S or MTSI was actually her employer, but this issue has no relevance to the discussion herein and is rendered moot with the Court's disposition of the case.

employees. Both Defendants contend that Plaintiff did not have either a serious medical condition or physical handicap while employed by Defendant Triple S Tower, Inc. ("Triple S"), that Triple S never failed to accommodate Plaintiff, and that Plaintiff's termination was for legitimate, non-discriminatory reasons. Defendant MTSI further contends that Plaintiff has no claim against it because it was not Plaintiff's employer and because Plaintiff never filed a charge against it with the New Mexico Human Rights Bureau, thus failing to exhaust prerequisite procedures.

The complaint consists of a single count of discrimination under the NMHRA, alleging that Plaintiff was the victim of illegal discrimination based her serious medical condition, a Bosniak II cyst, and has been the victim of disparate discipline and treatment in the workplace. According to the pleadings, a Bosniak II cyst is kidney cyst that can sometimes be pre-cancerous. Doc. 41, ¶¶9-10; Doc. 46 at 12-13; Doc. 41-2 (Mouchette Dep.) at 12:4-8 (describing as kidney cysts "that can be premalignant").

Plaintiff filed the complaint in state court on October 25, 2019 in the 3rd Judicial District, Dona Aña County, New Mexico, and Defendants removed the case to federal court on January 27, 2020 on the basis of diversity jurisdiction, 28 U.S.C. §1332(c)(1). The complaint describes defendant corporations as New Mexico businesses, which of course does not offer a basis for diversity jurisdiction. On removal Defendants state that the principal place of business for both Defendants has been and remains in Texas since 2017, *see* Doc. 1-2 (Spurlin Decl.) & Doc. 3 (Ans.), ¶4, and Plaintiff appears to have conceded to facts stating that Defendants are Texas corporations—which does provide a basis for federal diversity jurisdiction in this case. *See* Doc. 12 (Jt. Status Rep't) at 2 (stipulating to federal jurisdiction in District of New Mexico).

The Court will apply New Mexico law as the substantive law of this case. *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997) (federal court

sitting in diversity must apply the substantive law of the state in which it sits).

I.     **FACTS**[2]

    A.     <u>Plaintiff's Medical Condition</u>

Triple S Tower ("Triple S") hired Plaintiff in February 2013. Plaintiff worked as an office clerical employee and at times material to this lawsuit, Plaintiff served as an office manager for Triple S.

In January 2017 Plaintiff began to experience symptoms of illness. She felt bloated and had to use the bathroom frequently. She had no energy and felt "drained." Plaintiff consulted her health care provider, nurse practitioner Yvonne Mouchette ("Mouchette"), on April 11, 2017, complaining of abdominal pain.  Mouchette referred Plaintiff for a CT scan, which revealed that Plaintiff had a right renal lesion. Mouchette contacted Plaintiff to relay that the study was inconclusive and that an MRI needed to be conducted.  Based on the MRI, Mouchette diagnosed Plaintiff as having a benign Bosniak cyst. These cysts can be pre-cancerous. Plaintiff's cyst was categorized as a Category II cyst, meaning that it was mild to moderate. Plaintiff does not dispute how the cyst was categorized, except to point out that it had the potential of becoming more severe. *See* Pltff's Resp. to Defts' Fact 10.  Plaintiff's cyst is checked yearly, but it has stayed within normal limits.

Plaintiff's condition had no effect on her kidney or bowel functions, although Nurse Practitioner Mouchette testified that it could have a connection to the pain she was experiencing. Defts' Ex. 1 at 12-14.  No medical accommodations or restrictions were necessary as a result of the Bosniak cyst.  Plaintiff does not dispute that she was able to work without restrictions at that time and

---

[2] These facts are undisputed except where noted.  Also, the Court omits citations to supporting exhibits except where necessary.

3

was not impaired; and the cyst had no substantial effect on Plaintiff's everyday activities.  Plaintiff was not prescribed any medication for the cyst.  Plaintiff claims that the cyst had impacted her daily life because of pain in her kidney area from sitting for long periods of the day, yet at the same time states that she never requested or needed any accommodations in her job to address the discomfort because the cyst had no effect on her ability to perform her job duties.  Defts' Ex. 1 at 127:17-128:1, 51:8-11 ("I had no problems performing my duties"; "I didn't have any limitations.  Just uncomfortable sitting long times and the need to go to the bathroom a lot.").

Plaintiff admits that Shawn Blair, her immediate supervisor and Vice President of Triple S, showed no hostility when she informed him of her diagnosis.  In fact, she stated that Blair was "very comforting" and offered to do "anything" to help.  He assured her that her job was safe and that she had nothing to worry about.  Pltff's Ex. 1 at 53:1-12.  Plaintiff also stated that Blair never denied her the right to take time off when she did not feel well or expressed any frustration with her for being sick.  Pltff's Ex. 1 at 121:17-122:6.

B.     Plaintiff's Termination

In April 2017, Triple S' financial condition was precarious, owing large sums of money to its parent company, Microwave.  In order to address that condition, President and CEO of Triple S, David Spurlin, "made a recommendation" to Blair that Plaintiff be eliminated in order to reduce office overhead and have office staff of Microwave perform the office functions instead.  Spurlin's intention was "to cut Triple S Tower's overhead as much as possible and to focus on performing work in the field for paying clients."  Defts' Ex. 3, ¶3.  At the time Spurlin made this recommendation he had no information about Plaintiff's medical condition.  Blair accepted Spurlin's "recommendation" and terminated Plaintiff's employment.  Defts' Ex. 3 (Spurlin Decl.), ¶¶5-6.  Plaintiff summarily "disputes" these facts, but her own evidence undercuts her objections.  Most importantly, she concedes that Spurlin knew nothing about her medical condition at the time of her termination.  Her sole challenge

to these facts is to the characterization of her termination by Blair as a "recommendation," claiming that Blair actually had no choice but to fire her because of Spurlin's position in the company—which also does not advance her position in the end.

C. Plaintiff's Additional "Undisputed Material Facts"

Plaintiff offers her own set of facts (Facts 28-52) in the response.

1. Facts Related to Administrative Hearing

Defendants contend that Facts 34-40 relate to findings by the Human Rights Commission and so should not be considered by the Court, and the Court agrees. Under NMSA 1978 § 28-1-13(A) & (C), a party aggrieved by an order of the Commission is entitled to a trial de novo in the district court before a jury. The New Mexico Supreme Court has held that in providing for a trial de novo, the legislature intended to grant an aggrieved party a full evidentiary hearing "not limited to or constricted by the administrative record." *Contreras v. Miller Bonded, Inc.*, 2014-NMCA-011, ¶ 37, 316 P.3d 202, 212. The findings of the Commission or the Hearing Officer who conducted the administrative hearing therefore have no effect and Plaintiff cannot use those findings to bolster her position in this lawsuit or to create disputes of fact. *Id.* (holding that findings made by an administrative agency have no collateral estoppel effect on an action filed under the NMHRA, which grants a right to bring a "trial de novo" in the district court); *see also Gonzales v. New Mexico Dep't of Health*, 2000-NMSC-029, 129 N.M. 586, 11 P.3d 550 (evidence regarding the HRC's determination was not admissible in the district court because admission of such evidence might well have sidetracked the trial into an evaluation of the merits of that decision rather than focusing on the issues at trial).[3]

---

[3] Plaintiff cherry-picks certain factual findings from the administrative record for her summary judgment response. It is interesting although not surprising, that she omits the hearing officer's conclusion that Plaintiff "did not prove by a preponderance of the evidence that she was suffering from a serious medical condition or a physical or mental handicap or that [Defendants] unlawfully discriminated against her because of disability, serious medical condition [under the NMHRA]." Doc. 46-5 at 2.

### 2. *Plaintiff's Remaining Additional Facts*

Defendants contend that the remainder of Plaintiff's Additional Facts (Facts 28-33 and 41-52) all prove to be immaterial to the issue of whether Plaintiff was terminated because of her disability. For example, Plaintiff states that she disclosed her medical condition to "Defendants" prior to her termination, but the evidence she submits indicates that she spoke only to Blair about her diagnosis. *See* Pltff's Add'l Fact 28, referring to Pltff's Ex. A at 74:14-18 ("He's the first person I came and told that the doctor said cancer").[4] This fact is immaterial to Plaintiff's claim, because it is undisputed there was no evidence of any communication between Blair and Spurlin regarding Plaintiff's condition prior to her termination and that Spurlin (not Blair) was solely responsible for the decision to terminate Plaintiff.

Plaintiff also states that she was previously investigated at the workplace for allegedly making inappropriate charges using Blair's credit card and requesting reimbursement from MTSI. Following the investigation, Plaintiff was cleared of any wrongdoing, but she claims that Spurlin's attitude towards her changed and that "he hated her." Pltff's Add'l Facts 31-33, referring to Pltff's Ex. A (Hrg. Tr. at 56-60 and 131-133). The facts surrounding the credit card investigation are not sufficiently material to this case because it is irrelevant to (and inconsistent with) Plaintiff's argument that was terminated because of her medical condition, or was regarded as having one.

Plaintiff's Additional Facts 41-52 relate to claims of pretextual grounds for termination. Plaintiff states that Spurlin fired her "under the pretext of downsizing, but never had any intention of firing anyone else or downsizing the operation." She offers as evidence an e-mail from Spurlin to Blair:

> Ladonna has created more problems than you notice and its with everyone she has come in contact with. I could care less if she told she has something over your head *she needs to exit stage right.* We will pick up the pieces afterwards. *I would tell her we*

---

[4] As discussed earlier, there is no evidence that Plaintiff's Bosniak cyst was cancerous, or that she was told it was cancerous.

> *are forcing a change and we are dropping down to you in the office.*

Pltff's Add'l Fact 41.  Plaintiff also claims that she was the only person terminated from Triple S between April and September 2017 despite Defendants' claims that they were "downsizing."  Pltff's Add'l Fact 44 (relying on Ex. H).[5]  In Additional Fact 51, Plaintiff states that Blair's girlfriend was hired as an "Assistant to the President."  According to the proposed findings of fact from the administrative hearing, the girlfriend was hired a few weeks prior to Plaintiff's termination, and was then given the position as assistant to the president, working at Plaintiff's old desk. Doc. 46-5, ¶¶40, 64, 86, 113.[6]

Plaintiff offers these facts as a means to dispute Defendant's facts, but the Court agrees with Defendants that none of these additional facts are material to Plaintiff's discrimination claims as will be made clear in the discussion below.

**II.     Relevant Law**

NMSA 1978 §28-1-7(A) provides that it is unlawful for an employer to discharge and otherwise discriminate in matters of compensation, terms and conditions or privileges of employment based on the perception or reality that an employee has a serious medical condition. The term "serious medical condition" in the NMHRA is interchangeable with the term "disability" in the Americans with Disabilities Act (ADA"), 42 U.S.C. § 12101 *et seq. See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, P8; *Goodman v. OS Rest. Servs., LLC*, 2020-NMCA-019, P22.[7]

---

[5] In support of that claim, Plaintiff submits Exhibit H, which purports to be a list of employees "terminated between April and December 2017."  The source of Exhibit H is not clear, and the Court assumes its accuracy for the sake of this discussion.

[6] The Court recognizes that the findings from the administrative hearing has no binding effect on this lawsuit, as noted above.  They are included here to offer a context for Plaintiff's Additional Facts.

[7] The analytical framework used in the Americans With Disabilities Act ("ADA") claims has been applied to claims brought under the NMHRA. *Goodman v. OS Rest. Servs., LLC*, 2020-NMCA-019, ¶ 22, 461 P.3d 906, 913, *cert.*

The Department of Workforce Solutions has promulgated regulations defining serious medical condition in line with the meaning of "disability" under the ADA. A "serious medical condition" is a health-related impairment that substantially limits one or more of an individual's major life activities. NMAC § 9.1.1.7 (Z). The NMHRA defines "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." NMSA 1978 § 28-1-2(N).

An employee is regarded as having a serious health-related impairment in any of three circumstances:

(a) having a serious medical condition that does not substantially limit major life activities, but being treated by a respondent as having such a limitation;
(b) having a serious medical condition that substantially limits major life activities only as a result of the attitudes of others toward such impairments; or
(c) having none of the impairments described above, but being treated by a respondent as having such an impairment.

NMAC § 9.1.1.7 (Z)(3). *See also Goodman*, 2020-NMCA-019, P23 (employer regards employee as impaired if it "mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or . . . mistakenly believes that the person's actual, non-limiting impairment substantially limits one or more major life activities", quoting *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir. 2001) (internal quotation marks and citation omitted)). A plaintiff bringing a "regarded as" claim under the ADA needs to plead and prove only that she was regarded as having a physical or mental impairment. 42 U.S.C.A. § 12102(3)(A). *Adair v. City of Muskogee*, 823 F.3d 1297 (10th Cir. 2016).

### DISCUSSION

"Summary judgment should be granted 'if the movant shows that there is no genuine

---

*dismissed* (Jan. 13, 2020) (citing *Trujillo,* 131 N.M. at 613 (2002) ("it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act")).

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once this burden is met, however, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not "rest on mere allegations or denials [in] his [own] pleadings." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57, 259 (1986). The existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment because the requirement is that there be no genuine issue of material fact. *Id.* at 248-49. A material fact is one that affects the outcome of the suit under governing law. Only disputes over material facts will properly preclude the entry of summary judgment. *Id.* at 248.

Plaintiff's case is premised on a sole claim of disparate discipline and treatment.[8] To establish claims under either the NMHRA or the ADA, a plaintiff must show: (1) that she is disabled within the meaning of the ADA; (2) that she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that she was discriminated against because of his disability. *Davidson v. Am. Online, Inc.,* 337 F.3d 1179, 1188 (10th Cir. 2002).

**I.      Plaintiff Did Not Suffer From a Serious Medical Condition**

Plaintiff's own statements belie any claim that she suffers from a serious medical condition.

---

[8] Count I is described as "Violations of the NMHRA Act – Retaliation for Serious Medical Condition or the Perception of a Disability." Doc. 1-1 at 5.  However, nowhere in the pleadings is there any allegation (or mention) that Plaintiff was terminated for engaging in protected activity, which is a required element of a retaliation claim under the NMHRA. *See Ocana v. Am. Furniture Co*., 2004-NMSC-018, 135 N.M. 539, 91 P.3d 58, as corrected (June 9, 2004).  Nor is there any hint, either from Plaintiff's allegations or arguments in the response brief, that Plaintiff asserts a retaliatory discharge claim. This Court declines to consider theories not raised by counsel. *See McCook v. Springer School Dist*, 44 Fed.Appx. 896 (10th Cir. 2002); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 n. 1 (9th Cir.1986) (declining to broaden complaint of plaintiff represented by counsel).

While not trying to minimize or disregard any pain experienced by Plaintiff as a result of her having a benign Bosniak cyst, the cyst does not substantially limit any major life activity or bodily systems under either the NMHRA or the ADA. Plaintiff testified that she "had no problems performing [her job] duties" and that she "didn't have any limitations." Defts' Ex. 1 at 127:17-128:1. In fact, Plaintiff described the category level of the cyst (stage II) as "no big deal." *Id.* at 89:23.

Plaintiff claims that she has difficulty sitting for long periods of time, but by her own admission, she did not require nor did she seek any medical accommodations or restrictions. Nurse Practitioner Mouchette did not think the pain Plaintiff experienced was connected to the cyst and opined that it "wasn't a disabling type of finding." Defts' Ex. 2 at 15:5-15. Plaintiff was prescribed an anti-inflammatory medication to "help with the bloating. But there was nothing specifically for the pain." *Id.* at 18:12-18.

Thus, based on evidence from Plaintiff's health care provider and from Plaintiff herself, the Bosniak cyst she was diagnosed with did not substantially limit any major life activities. Therefore, Plaintiff's cyst cannot be considered a "serious medical condition."

## II. Plaintiff Was Not Regarded As Disabled

Plaintiff's cyst can still be considered a "serious medical condition" if Triple S, as Plaintiff's employer, regarded that condition as resulting in an impairment. There is no evidence that this occurred in this case. To find that an employer "regarded" an employee as disabled or as having a serious medical condition requires some evidence that the employer entertained misperceptions about the individual. The employer must believe either that the individual has a substantially limiting impairment that she does not have or that the individual has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492 (10th Cir.2000).

10

Plaintiff offers no evidence that anyone involved with supervising her job at Triple S found her Bosniak cyst to limit her in any way. Plaintiff herself stated there was no hostility on his part, nor on the part of anyone at Triple S toward her medical condition. Plaintiff testified that Blair freely allowed her to take time off when she did not feel well and never expressed any frustration with her being sick or taking time off. To the contrary, the evidence shows only that Blair was supportive and assured Plaintiff that her job was safe.

Plaintiff cannot show that she was "regarded as disabled" solely on her employer's knowledge that she was diagnosed with a Bosniak cyst. *See Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211 (10th Cir. 2007) (employer's knowledge that employee suffered from multiple sclerosis and approved FMLA leave was not sufficient to raise an issue of fact as to whether the employer regarded the employee as disabled); *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1256 (10th Cir. 2001) ("An employer's knowledge of an impairment alone is insufficient to establish the employer regarded the employee as disabled."). Therefore, Plaintiff's claim cannot go further, as she fails to satisfy the basis elements of an ADA claim. However, the Court continues the analysis assuming Plaintiff satisfied a prima facie case.

### III. Plaintiff Does not Offer Evidence of Pretext

Even assuming Plaintiff there was a finding that Plaintiff had a serious medical condition, or was regarded as disabled under the NMHRA, she still must prove that she was discriminated against because of her Bosniak cyst. However, Plaintiff offers no facts from which a reasonable juror could make that connection.

An employer cannot fire an employee "because of" a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee "because of some other reason." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 18, 131 N.M. 607, 614, 41 P.3d 333, 340 (internal quotations omitted) (citing *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir.1995) (quoting 42 U.S.C. § 12112)).

11

A.      Employer Not Aware of Medical Condition

The undisputed facts here are clear: Shawn Blair, Plaintiff's immediate supervisor, was aware of her diagnosis prior to her termination. David Spurlin, President and CEO of Triple S, stated that he first learned of Plaintiff's potentially cancerous growth on her kidney just after Blair terminated Plaintiff and then called him. Doc. 41-3 (Spurlin Decl.), ¶5; Doc. 46-4 (Spurlin Depo.) at 27:14-18.[9] Plaintiff minimizes the significance of Spurlin's Declaration statements but offers no facts to rebut them. Instead, she claims that Spurlin was aware of her condition solely because "Mr. Blair, Plaintiff's immediate supervisor and head of the day-to-day operations of the company was aware and told Mr. Spurlin." Doc. 46 at 15. Plaintiff does not state that she overheard Blair telling Spurlin, nor does she point to some other individual who overheard such a conversation. In other words, there is no evidence at all from which to infer that Spurlin knew about Plaintiff's kidney cyst. Plaintiff simply assumes that Spurlin knew about her condition because Blair knew. This is sheer speculation and not evidence, and is insufficient to create an issue of fact regarding Spurlin's awareness of Plaintiff's medical condition prior to her termination. Thus, the Court considers as undisputed that David Spurlin was not aware of Plaintiff's medical condition prior to her termination. Because Plaintiff is unable to show such knowledge on Spurlin's part, Plaintiff must show some other connection between her medical condition and her termination.

B.      Termination Was Not Pretextual for Discrimination

To show that a Defendant's proffered reasons for discrimination are actually a pretext for discrimination, a plaintiff must demonstrate that those reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy

---

[9] Spurlin stated that after Blair terminated Plaintiff, Blair called Spurlin and said "She [Plaintiff] is now saying she has cancer." Pltff's Ex. E (Spurlin Dep.) at 27:1-3. Spurlin said he compared that statement to "I'm breaking up with you, and I'm now pregnant." *Id.* Blair made the call to Spurlin within several hours of terminating Plaintiff. *Id.* at 27:14-17.

of belief." *Zamora v. Board of Educ. for Las Cruces Public Schools,* 2014 WL 260293, 3 -4 (10th Cir. 2014) (citing *Young v. Dillon Cos.,* 468 F.3d 1243, 1250 (10th Cir. 2006)). In "appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.* In drawing such an inference, "the factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions." *Id*.

First, as previously noted, it is undisputed that Spurlin was aware of Plaintiff's medical condition prior to the time he told Shawn Blair to terminate her.

Second, Defendant offers evidence that it was Spurlin's decision alone to terminate Plaintiff, and that Blair had no choice but to follow Spurlin's "recommendation." There is also no evidence that Shawn Blair, who did know about Plaintiff's Bosniak cyst, was involved in the decision to terminate Plaintiff. Additionally, Plaintiff's own evidence shows that Blair was not involved in the decision to terminate Plaintiff and that he was only following Spurlin's directive:

- Mr. Spurlin was the President and CEO of Triple S Tower and the Chairman of the Board of MTSI, Inc. *See*, Ex. D (8:18-9:10). He had ultimate authority and the final decision. Resp to Deft's Fact 22. "Mr. Blair was not in a position to refuse any demand by Mr. Spurlin." *Id.* Mr. Spurlin could not terminate Mr. Blair because he was vice president of Triple S, but he could have done "whatever we needed to do to eliminate that company." Doc. 46-4 (Spurlin Dep.) at 17:18-25; 18:1-10. In fact, Plaintiff takes pains to insulate Blair from responsibility in the company's decision to terminate her. She "disputes" Defendant's statement that Blair "accepted" Spurlin's recommendation to make it clear that Blair had no choice but to follow Spurlin's directive.

- Shawn Blair was somewhat familiar with Plaintiff's medical history and knew about her diagnosis, *see* Pltff's Ex. 1 at 77, but was working "on her behalf" to help her keep her job. Doc. 46-1 (Hrg Tr.) at 53:6-12 (Blair was comforting); Doc. 46-3 (Pltff's Dep. at 46:1-6.

The undisputed evidence shows that Spurlin, the only person responsible for Plaintiff's termination, was not aware of Plaintiff's medical condition and Blair, the person who *was* aware of Plaintiff's kidney cyst, was not involved in the decision to terminate her. Because Plaintiff

13

cannot show a connection between Spurlin and her medical condition, she cannot show that her termination was based on anything having to do with that condition. *See* Magruder v. Runyon, 844 F.Supp. 696, 705 (D.Kan. 1994), aff'd, 54 F.3d 787 (10th Cir. 1995) (concluding that plaintiff could not make out a prima facie case of discrimination based on disability where facts were uncontroverted that employer had no knowledge of plaintiff's disability when he was terminated); *see also Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1144-45 (10th Cir. 2009) (noting that focus of discrimination claim is on the particular decision-maker and evidence of general bias must be tied to decision-maker at issue).

      C.      <u>Plaintiff's Additional Facts Do Not Offer Evidence of Pretext</u>

Having determined that Plaintiff's employer, Dave Spurlin, was solely responsible for Plaintiff's termination and that he was not aware of her medical condition, the Court's analysis may rest here without going further. However, even assuming that Spurlin in fact knew about Plaintiff's kidney cyst, Plaintiff cannot show that her termination was pretextual for a discriminatory motive.

In her additional facts, Plaintiff asserts that she was the only office employee terminated because of "downsizing" (other workers were terminated based on job performance); and that other workers were hired even after she was terminated. Pltff's Add'l Facts 41-52.

It is undisputed that Triple S was in extreme financial distress and that Spurlin considered various measures to alleviate the problem, such as allowing Blair to remain in charge of operations at the company, cut overhead as much as possible and focus on performing workers in the field. Doc. 41-3, ¶¶3-4.[10] Plaintiff's evidence of continued hiring after her termination consists of a single text message which expresses an intention to "hire some more guys [with experience]" but

---

[10] Shawn Blair tendered his resignation to Dave Spurlin in April 2017  Pltff's Ex. E (Spurlin Dep.) at 25: 17-23.

14

it does not state whether these would-be employees were ever in fact hired, and whether they were hired to work in the office or in the field.  *See* Pltff's Ex. G.  Thus, no reasonable juror could view this as evidence of pretext. Plaintiff also offers e-mail evidence that Spurlin believed that Plaintiff "created more problems . . . with everyone she has come in contact with" (*see* Pltff's Ex. F)—but Spurlin's opinion of Plaintiff as stated in the e-mail does not remotely suggest discriminatory intent based on Plaintiff's kidney cyst.

In the end, Plaintiff offers no evidence from which a fact-finder can reasonably infer that Defendants—either Spurlin or Blair—are dissembling to cover up a discriminatory purpose.  At most, one may stretch inferences a bit and wonder whether Spurlin harbored a dislike for Plaintiff hanging on from the credit card investigation or even whether Blair had his eye on Plaintiff's office job for his girlfriend. *See* Pltff's Ex. 5 (Hrg. Tr.), ¶50 (Plaintiff saw Blair's girlfriend sitting at her old desk when she returned to the office after termination to recover an item belonging to her). Even so, none of these possibilities reasonably suggests pretext for terminating Plaintiff because of her kidney cyst.  *See, e.g., Mitchell v. ESPY*, 845 F.Supp. at 1493 (dislike is not a pretext for discrimination); *Rakovich v. Wade*, 850 F.2d 1180, 1192-93 (7th Cir. 1987) (generic dislike is not retaliation).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of discrimination based on medical condition.

### IV.     Dismissal of MTSI Based on Exhaustion

The parties dispute whether Defendant MTSI was properly joined in this case, and whether Plaintiff properly exhausted her claims against that party.  In light of the Court's disposition of Plaintiff's claims, there is no need to consider this issue.

## CONCLUSION

In sum, the Court finds and concludes that:

(1) Plaintiff has not shown that she suffers from a "serious medical condition" under the NMHRA;

(2) Plaintiff has not presented evidence that she was "regarded as" disabled under the NMHRA;

(3) The evidence presented shows that Plaintiff was terminated in order to alleviate the financial problems Triple S was experiencing and Plaintiff presents no evidence that this reason was pretextual and based on discriminatory motive. The undisputed facts indicated that there is a total disconnect between Plaintiff's termination and any suggestion of discrimination based on Plaintiff's kidney cyst.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **(Doc. 41)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE